DECISION AND JUDGMENT ENTRY
Appellant Mark A. Nichols appeals from a judgment entered by the Vinton County Court finding him guilty of an overload violation under R.C. 5577.04 (B) (3). Appellant raises the following assignments of error for our review:
 "I. The Court erred in denying Defendant's Motion to suppress the arrest of Defendant and weighing of Defendant's truck."
 "II. The Court erred in denying Defendant' s Motion to dismiss the charges of overload for the reason that Section 5577.04 of the Ohio Revised Code is unconstitutional."
Finding appellant's assignments of error to be meritless, we affirm the trial court's decision.
 I.
Appellant was traveling eastbound on Route 32 in a commercial motor vehicle when he was stopped by Trooper McKeever of the Ohio State Highway Patrol. Trooper McKeever testified that he stopped appellant for a suspected overweight violation. Trooper McKeever noticed that appellant's tires were smashed, "washing footprints" and bulging. He explained that weight causes a tire to smash down and have an egg-like shape. Trooper McKeever also observed that the suspension of the truck was limited and that the truck was traveling approximately 40-45 miles per hour on an uphill grade and struggling to move up the grade. Based on the totality of these observations, Trooper McKeever believed appellant's truck was overweight and stopped him to weigh the vehicle. Trooper McKeever also testified that he had been a trooper for almost twelve years, that he was employed by the Ross County Sheriff's Department for six years prior to his current employment and that he has been the formal scale trooper in his district for three years.
Appellant filed a motion to suppress the results of the weighing of his vehicle and argued that Trooper McKeever did not have an articulable reason to stop appellant's vehicle. Appellant also filed a motion to dismiss in which he contended that R.C. 5577.04 is unconstitutional as it violates due process requirements.
At the conclusion of the hearing, the trial judge overruled appellant's motion to suppress. Orally, the trial judge found that "there was probable cause to make the stop on Mark A. Nichols" based on the observations of the trooper and his years of training and experience. The trial court found that the trailer tires were smashed and bulging, the suspension on the truck was limited and the truck was struggling to overcome the hill. Therefore, Trooper McKeever had reason to stop appellant. The trial court also overruled appellant's motion to dismiss. Appellant was subsequently found guilty by the trial court of the overload violation, was fined $908.50 and ordered to pay court costs. A timely appeal was filed.
 II.
In his first assignment of error, appellant argues that the trial court erred in denying his motion to suppress as the observation of bulging tires alone does not justify a stop and weighing of a vehicle. Appellant further argues that there is no basis for Officer McKeever's conclusion that the truck was overweight based on the appearance of the tires, the limited suspension and the struggle to overcome a steep grade. The state contends that Trooper McKeever possessed a reasonable suspicion of criminal activity based upon specific and articulable facts such that the stopping and weighing of appellant's vehicle was constitutional. In its oral findings, the trial court found that probable cause to stop appellant was established.[1]
In a motion to suppress, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and evaluate witness credibility. See, e.g.,State v. Mills (1992), 62 Ohio St.3d 357, 366, citing State v.Fanning (1982), 1 Ohio St.3d 19, 20; see, also, State v. Williams
(1993), 86 Ohio App.3d 37, 41. Accordingly, in our review we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Guysinger
(1993), 86 Ohio App.3d 592, 594. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusions, whether they meet the applicable legal standard. Ornelas v. United States (1996),517 U.S. 690, 134 L.Ed.2d 911, 116 S.Ct. 1657; State v. Klein (1991),73 Ohio App.3d 486, 488; Williams; Guysinger, supra.
The Fourth and Fourteenth Amendments to the United States Constitution,[2] as well as Section 14, Article I of the Ohio Constitution,[3] protect individuals against unreasonable governmental searches and seizures. Delaware v. Prouse (1979)440 U.S. 648, 662, 99 S.Ct. 1391, 59 L.Ed.2d 660; State v.Gullett (1992), 78 Ohio App.3d 138, 143. In Katz v.United States (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 514,19 L.Ed.2d 576, the Supreme Court held that "searches conducted outside the judicial process; without prior approval by a judge or magistrate, are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions." See, also, State v. Sneed (1992),63 Ohio St.3d 3, 6-7; State v. Braxton (1995), 102 Ohio App.3d 28,36. The investigative stop exception to the Fourth Amendment warrant requirement allows a police officer to conduct a brief investigative stop if the officer possesses "reasonable suspicion." Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868,20 L.Ed.2d 889. The reasonable suspicion must be based upon specific articulable facts, and rational inferences from those facts, warranting the belief that criminal behavior has occurred, is occurring or is imminent. Id. See, also, United States v. Brignoni-Ponce (1978), 422 U.S. 873, 95 S.Ct. 2574,45 L.Ed.2d 607; State v. Andrews (1991), 57 Ohio St.3d 86; State v. Venham
(1994), 96 Ohio App.3d 649. To justify an investigative stop, the officer must be able to articulate specific facts which would warrant a person of reasonable caution in the belief that the person stopped has committed, is committing or is about to commit a crime. Whren v. United States (1996), 517 U.S. 806,116 S.Ct. 1769, 135 L.Ed.2d 89; Prouse, supra; Terry, supra. The propriety of an investigative stop must be reviewed in light of the totality of the circumstances. State v. Bobo (1988), 37 Ohio St.3d 177.
R.C. 4513.33 provides in part:
 Any police officer having reason to believe that the weight of a vehicle and its load is unlawful may require the driver of said vehicle to stop and submit to a weighing * *
The "reason to believe" standard enunciated in the statute has been equated to the Terry "reasonable suspicion" standard. See State v. Meyers (1990), 63 Ohio App.3d 765; Maumee v. Kelly
(Aug. 20, 1993), Lucas App. No. L-93-024, unreported.
In State v. Horsley (Jan. 25, 1999), Ross App. No. 98CA2423, unreported, we held that "bulging tires coupled with an officer's training and experience can indeed give rise to a reasonable suspicion that a vehicle exceeds the applicable weight restrictions." Here, Trooper McKeever relied on more than the bulging tires in determining that appellant's truck was likely overweight.
Trooper McKeever testified that he stopped appellant's vehicle because the tires were bulging, the suspension movement was limited and the truck was traveling 40-45 miles per hour on an uphill grade and appeared to be struggling. These observations, coupled with Trooper McKeever's experience, gave rise to a reasonable articulable suspicion that the truck was overloaded. Trooper McKeever was not required to cite scientific evidence that these factors indicate overloading; rather, Trooper McKeever's experience and common sense support this conclusion. Furthermore, "[the] suspicion need not always prove true. It is enough that it is reasonable to believe that it is true." Cityof Toledo v. Harris (1994), 99 Ohio App.3d 469, 471.
Under this fact pattern we agree with the trial court's conclusion that Officer McKeever possessed reasonable suspicion that appellant was in violation of R.C. 5577.04 50 that the stop and weighing of appellant's vehicle was constitutional.
Accordingly, we overrule appellant's first assignment of error.
 III.
In his second assignment of error, appellant argues that the trial court erred in denying appellant's motion to dismiss because R.C. 5577.04 is unconstitutional as it violates appellant's due process rights. In particular, appellant contends that no one of reasonable intelligence can read R.C.5577.04 and understand the type of activity it prohibits. Appellant further argues that the statute is so confusing and vague that no one of ordinary intelligence could determine, without actually being weighed, whether one's vehicle conforms to the weight load limits of the statute.
R.C. 5577.04 provides in relevant part that:
* * *
 (B) The weight of vehicle and load imposed upon the road surface by vehicles with pneumatic tires shall not exceed any of the following weight limitations:
(1) On any one axle, twenty thousand pounds;
 (2) On any tandem axle, thirty-four thousand pounds;
 (3) On any two or more consecutive axles, the maximum weight as determined by application of the formula provided in division (C) of this section.
 (C) For purposes of division (B) (3) of this section, the maximum gross weight on any two or more consecutive axles shall be determined by application of the following formula:
W = 500((LN/N-1 + 12N + 36)).
 In this formula, W equals the overall gross weight on any group of two or more consecutive axles to the nearest five hundred pounds, I, equals the distance in rounded whole feet between the extreme of any group of two or more consecutive axles, and N equals the number of axles in the group under consideration. However, two consecutive sets of tandem axles may carry a gross load of thirty-four thousand pounds each, provided the overall distance between the first and last axles of such consecutive sets of tandem axles is thirty-six feet or more.
* * *
 (E) Notwithstanding divisions (B) and (D) of this section, the maximum overall gross weight of vehicle and load imposed upon the road surface shall not exceed eighty thousand pounds.
* * *
Legislative enactments enjoy a strong presumption of constitutionality.State v. Collier (1991), 62 Ohio St.3d 267, 269. The party challenging a statute as unconstitutional has the burden of proving that assertion beyond a reasonable doubt. Id. To prove such an assertion, the challenging party must show that the statute is vague "not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all * * *." State v. Anderson (1991),57 Ohio St.3d 168, 171, citing Coates v. Cincinnati (1971),402 U.S. 611, 614. The challenger must show that a person of ordinary intelligence would not understand what he is required to do under the law. Id. Here, appellant must prove, beyond a reasonable doubt, that R.C. 5577.04 is so unclear that he could not reasonably understand that it prohibited the act in which he engaged.
A tripartite analysis must be applied when examining the void-for-vagueness doctrine. See Papachristou v. City ofJacksonville (1972), 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110. "These values are first, to provide fair warning to the ordinary citizen so behavior may comport with the dictates of the statute; second, to preclude arbitrary, capricious and generally discriminatory enforcement by officials given too much authority and too few constraints; and third, to ensure that fundamental constitutionally protected freedoms are not unreasonably impinged or inhibited. Proper constitutional analysis necessitates a review of each of these rationales with respect to the challenged statutory language." Collier, 62 Ohio St.3d at 270, citing Statev. Tanner (1984), 15 Ohio St.3d 1, 3.
The notice component of the test reflects that all persons are entitled to be informed as to what the state commands or forbids. Collier, supra. To be enforceable, however, the legislation need not be drafted with scientific or mathematical certainty. Id. Here, subsection (C) was drafted with mathematical certainty and appellant seems to argue that this technical drafting makes R.C. 5577.04 incomprehensible to the general population. While subsection (C) may require a calculator and a measuring device, we do not find it so overwhelming that the average citizen does not have fair warning of the weight restrictions imposed. Similarly, the remainder of the statute provides clear and unambiguous notice of the state weight restrictions. Occasional doubt or confusion about a statute does not render it vague on its face. Anderson,57 Ohio St. 3d at 173, citing Hoffman Estates v. The Flipside, HoffmanEstates, Inc. (1982), 455 U.S. 489, 495-496. We see little, if any, room for speculation as to the meaning of the statute. Therefore, we find that R.C. 5577.04 contains sufficient language to provide the average person with adequate notice and fair warning as to the standard of conduct required by the statute.
The second value we must consider is the prevention of arbitrary and discriminatory enforcement. We find that R.C.5577.04 leaves no discretion as to the application and enforcement of the statute. The language of the statute clearly defines load limits for both citizens and law enforcement personnel.
Third, we must ensure that fundamental constitutionally protected freedoms are not unreasonably impinged upon or inhibited. The right to transport items weighing more than the statute allows is not a fundamental right. Therefore, fundamental freedoms are not being limited by R.C. 5577.04.
Appellant's argument that the statute is unconstitutional because a driver cannot know the weight of a vehicle without weighing it is not persuasive. In State v. Tanner, supra, the Supreme Court addressed the constitutionality of a statute imposing liability on a person who operates a vehicle when the person has a concentration of ten-hundredths of one per cent or more by weight of alcohol in his blood. In holding that the statute was not vague despite the fact that a person cannot check his blood alcohol level, the Court stated that, "[i]t simply does not matter since the liability is absolute. Just as one may not argue that a stop sign which was violated was not seen by or known to the violator, so may not a person whose * * * [blood alcohol] registers .10% or above on an appropriately calibrated breathalyzer argue that he did not know it was so." Id. at 4, fn. 4, citing People v. Kappas (1983), 120 Ill. App.3d 123,458 N.E.2d 140, 145.
The statute at issue here does not require that a driver know he is exceeding state weight limitations. Therefore, appellant's argument that the statute is unconstitutional because the average person cannot determine if he or she is violating the statute without weighing the vehicle is meritless. Furthermore, we do not agree with appellant's position that the only method of determining a vehicle's weight is to weigh the vehicle. A driver may determine the weight of the empty vehicle in many ways, i.e.
driving through a weigh station while the truck is empty or contacting the manufacturer. The driver must then determine the weight of the load or freight from the bill of lading or from the company for which he is hauling the load. By adding the weight of the empty truck to the weight of the freight, the driver can determine whether his vehicle is in violation of R.C. 5577.04
without weighing the vehicle before each trip. In situations where the weight of the load is unknown, we see no reason why the driver can't weigh the loaded truck if he has concerns about exceeding the weight limit.
Therefore, we find that appellant's second assignment of error is meritless as R.C. 5577.04 is not unconstitutionally vague.
Having found no merit in either of appellant's assignments of error, we affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
[1] We note that the existence of probable cause is not the measure of testing the constitutionality of a traffic stop. As discussed, infra, the less stringent "reasonable articulable suspicion" standard must be met.
[2] The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation and particularly describing the place to be searched, and the persons or things to be seized."
[3] Section 14, Article I of the Ohio Constitution provides: "The right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the person and things to be seized."
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Vinton County Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
ABELE, J. EVANS, J.: Concur in Judgment and Opinion.
 NOTICE TO COUNSEL Pursuant to Local Rule No. 14, this document constitutes afinal judgment entry and the time period for further appealcommences from the date of filing with the clerk.